IN THE UNITED STATES DISTRICT COURT
DISTRICT OF KANSAS

**Brooklyn Lonker,**

      **Plaintiffs,**

v.                                                    Case No. 16-2097-JWL

**Jared Lyden and Darren Chambers,**
**in his individual capacity and**
**in his official capacity as Sumner County Sheriff,**

      **Defendants.**

## **MEMORANDUM & ORDER**

Plaintiff Brooklyn Lonker filed suit against defendants under 42 U.S.C. § 1983, alleging violations of the First, Fourth and Fifth Amendments of the United States Constitution after she was detained and handcuffed in a patrol car following a traffic stop of a vehicle in which plaintiff was a passenger. Sheriff Chambers filed a motion to dismiss the complaint and, in lieu of filing a response to the motion, plaintiff filed a motion for leave to file an amended complaint. Sheriff Chambers opposes the motion on futility grounds and defendant Jared Lyden opposes the motion on the grounds that amendment will cause prejudice to him. As will be explained, the motion for leave to file an amended complaint is granted in part and denied in part. Plaintiff may file an amended complaint as described herein no later than Monday, August 29, 2016. Sheriff Chambers' motion to dismiss is rendered moot in light of the amendment.[1]

---

[1] In his motion to dismiss the complaint, Sheriff Chambers asserted the defense of qualified immunity. He did not raise that issue in connection with his opposition to the motion for leave to file an amended complaint, presumably because he had already done so. Because the initial

**Background**

In his opposition to plaintiff's motion for leave to file an amended complaint, Sheriff Chambers asserts that amendment is futile because the amended complaint would not survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6).  In analyzing the parties' submissions, then, the court accepts as true "all well-pleaded factual allegations in the complaint and view[s] them in the light most favorable to the plaintiff."  *Burnett v. Mortgage Elec. Registration Sys., Inc.*, 706 F.3d 1231, 1235 (10th Cir. 2013) (citation omitted); *Full Life Hospice, LLC v. Sebelius*, 709 F.3d 1012, 1018 (10th Cir. 2013) ("A proposed amendment is futile if the complaint, as amended, would be subject to dismissal.").  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007))).  Consistent with this standard, the following well-pleaded allegations, taken from plaintiff's proposed amended complaint, are accepted as true.

On February 16, 2014, Conway Springs Police Officer Jeff Cole stopped a vehicle at 12:30am because the driver of the vehicle had failed to dim her headlights and was driving 37 miles per hour in a 30-miles-per-hour zone.  The driver and the two passengers in the vehicle, including plaintiff, were all female high-school students.  Plaintiff was riding in the back seat of the vehicle and the other passenger was riding in the front passenger seat of the vehicle.  Officer

---

complaint is now moot, Sheriff Chambers may move to dismiss the amended complaint, once filed, on qualified immunity grounds.

Cole asked the driver to perform a field sobriety test to determine whether she was under the influence of alcohol.  The driver successfully completed the test.  Officer Cole further checked the identities of all occupants and confirmed that none had outstanding warrants.  Forty minutes later, at 1:10am, defendant Jared Lyden arrived on the scene.  At that time, defendant Lyden was a Deputy with the Sumner County Sheriff's Department.   Plaintiff does not allege whether Officer Cole called for assistance or otherwise explain why Deputy Lyden arrived on the scene. Plaintiff alleges that Deputy Lyden had a ride-along passenger in his patrol car at the time of the stop with whom he had a "close personal relationship."  She further alleges that Deputy Lyden, when he arrived on the scene, made the conscious decision not to activate his emergency lights because doing so would turn on the in-dash video and audio recording system.  Because of Deputy Lyden's decision, there was no video or audio recording of the stop.[2]  According to plaintiff, Deputy Lyden "did not believe Officer Cole was sufficient handling the stop" and he "took over" immediately upon his arrival.  Plaintiff contends that Deputy Lyden knew upon his arrival that the occupants of the vehicle had already been detained for 40 minutes and that the driver had passed a field sobriety test.

Deputy Lyden continued to detain the occupants of the vehicle until almost 3:00am. Plaintiff alleges that Deputy Lyden believed that the driver had been drinking alcohol and smelled of alcohol.  Deputy Lyden required the driver to submit to a preliminary breath test (PBT).  That test indicated that the driver had no detectable alcohol in her system.  Deputy Lyden asked the front seat passenger to submit to a PBT.  At that point, plaintiff told the

---

[2] While plaintiff alleges that Deputy Lyden did not "save" the recording, the allegations taken as a whole suggest that no recording was made in the first instance.

passenger that she was not required to submit to the test "or to answer the officers' questions." The front seat passenger refused to submit to a PBT and refused to answer Deputy Lyden's questions. The proposed complaint does not identify any specific question posed by Deputy Lyden to the front seat passenger. Deputy Lyden then asked plaintiff to submit to a PBT and she refused. She also refused to answer Deputy Lyden's questions. Again, the proposed complaint does not identify any particular question asked by Deputy Lyden. Plaintiff asserts that Deputy Lyden "interrogated" her and that, in response, plaintiff refused to answer any questions and demanded an attorney. Plaintiff alleges that Deputy Lyden continued to interrogate plaintiff and to demand that she submit to a PBT.

Plaintiff refused to submit to a PBT and was ultimately handcuffed and placed in custody in Deputy Lyden's patrol car. Plaintiff contends that Deputy Lyden, while plaintiff was in custody in the patrol car, "threatened plaintiff that she would by physically harmed by others in the jail where there were rapists and murderers." In the meantime, the owner of the vehicle (who was also the mother of the front seat passenger) was called to the scene and she consented to a search of the vehicle. During the search, Officer Cole found a bottle of vodka under the front passenger seat and one or more cans of beer behind the back seat of the vehicle. Plaintiff received a Minor in Possession citation and a citation for Transportation of an Open Container.

According to plaintiff, Deputy Lyden never prepared a report concerning the February 16, 2014 traffic stop involving plaintiff despite the fact that Department policy required the preparation of a report anytime a stop involves detainment. In May 2014, Deputy Lyden prepared a report via email "only because he was caught and reprimanded for failing to file a report." In September 2014, the trial court dismissed the criminal case against plaintiff with

prejudice and that decision was affirmed by the appellate court. In dismissing the case, the trial court, according to plaintiff, wrote in a journal entry:

> The arresting officer allowed important and possibly exculpatory evidence in his possession to be destroyed. The officer's employment with the county has been terminated. He has a reputation in the legal community for dishonesty. Even if this matter were to be remanded to the city court for trial, the prosecutor should consider his ethical duty to seek justice, and refuse to prosecute this matter further.

There are no additional allegations concerning the arresting officer's alleged destruction of evidence, but plaintiff suggests only that this allegation refers to Deputy Lyden's failure to activate his emergency lights so that his dash cam would not record the stop.

Plaintiff alleges that Deputy Lyden has a history of overly aggressive behavior and that, throughout 2012, Deputy Lyden was criticized by his supervisors for the manner in which he dealt with citizens and for his potential violations of citizens' constitutional rights, including making unnecessary arrests and unnecessary stops. In March 2012, plaintiff's supervisors ordered an evaluation of Deputy Lyden in light of these issues. According to plaintiff, Deputy Lyden indicated during the course of this evaluation that his supervisors trained him to destroy evidence; that he believed that he could arrest individuals for refusing to answer questions during a stop; and that he believed that he could violate the constitutional rights of citizens during an investigation so long as he believed that the citizen was "guilty." At the conclusion of the evaluation, it was determined that training attempts to correct Deputy Lyden's job-related problems had failed and that Deputy Lyden's conduct could not be corrected with further training. The Sheriff's Department, however, rejected a recommendation that Deputy Lyden be assigned a mentor or be moved to a different position. His conduct did not improve and he received multiple disciplinary warnings and one suspension prior to the stop at issue in this case.

Deputy Lyden's conduct was also the subject of two internal investigations prior to the stop in this case. And just one month prior to the stop in this case, a Sumner County district judge concluded in an unrelated case that Deputy Lyden's testimony during a hearing on a motion to suppress evidence was not credible in light of the evidence established through a dash cam video and audio recording.

According to the proposed amended complaint, Sheriff Chambers was fully aware of Deputy Lyden's beliefs and conduct. With this knowledge, Sheriff Chambers selected Deputy Lyden to become a Field Training Officer and allegedly told Deputy Lyden that "he wished he had ten more deputies like Lyden." After the stop at issue in this case, the Sheriff's Department began an internal investigation into Deputy Lyden's conduct. Deputy Lyden resigned his employment during the investigation and the investigation was closed.

**Discussion**

In their first amended complaint, plaintiff asserts claims against Sheriff Chambers for violations of plaintiff's First, Fourth and Fifth Amendment rights. Specifically, plaintiff alleges that Sheriff Chambers violated her First Amendment rights by failing to supervise and control the activities of Defendant Lyden who, in turn, allegedly detained and handcuffed plaintiff in retaliation for plaintiff's speech—namely, her telling Ms. Boswell that she did not have to submit to a breath test or answer any questions.[3] She alleges that Sheriff Chambers violated her

---

[3] Plaintiff also alleges that Defendant Lyden failed to preserve "potentially exculpatory evidence" in retaliation for plaintiff's speech. This allegation necessarily fails because the amended complaint, on its face, establishes that any failure to preserve the dash cam video and audio recording occurred at 1:10am when Defendant Lyden arrived at the scene and did not

Fourth Amendment rights by failing to supervise and control the activities of Defendant Lyden who, in turn, unnecessarily extended the stop and then detained and handcuffed plaintiff in violation of the Fourth Amendment.[4]  Finally, plaintiff alleges that Sheriff Chambers violated plaintiff's Fifth Amendment rights by failing to supervise and control the activities of Defendant Lyden who, according to plaintiff, unnecessarily extended the stop, continued to question plaintiff, and detained plaintiff in retaliation for plaintiff's exercise of her Fifth Amendment rights—namely, her refusal to submit to a breath test and her refusal to answer Defendant Lyden's questions.

*First Amendment Claim*

Sheriff Chambers moves to dismiss plaintiff's claim under the First Amendment on the grounds that, even if Defendant Lyden detained plaintiff in retaliation for her statements to Ms. Boswell, she cannot state a plausible claim for relief because the complaint establishes on its face that Defendant Lyden had probable cause to arrest and detain her.  *See Esparza v. Bowman*, 523 Fed. Appx. 530, 535 (10th Cir. Apr. 25, 2013) (plaintiff alleging First Amendment

---

activate his emergency lights.  In other words, this conduct occurred well before plaintiff's speech and there is no allegation that any failure to preserve evidence occurred after plaintiff's speech.  This aspect of the motion to amend, then, must be denied.

[4] Plaintiff also alleges in her proposed amended complaint that her Fourth Amendment rights were violated by Deputy Lyden's failure to preserve potentially exculpatory evidence.  While Sheriff Chambers does not challenge this specific allegation in the context of the Fourth Amendment claim, the allegations in the proposed complaint do not reveal a plausible Fourth Amendment claim arising from this asserted failure.  To the extent that plaintiff desires to pursue a Fourth Amendment claim stemming from this asserted failure, plaintiff's amendment must provide some factual context concerning what evidence Deputy Lyden allegedly failed to preserve, how that evidence was "exculpatory" and how that failure violated plaintiff's right to be free from unlawful search and seizure.

retaliation claim must plead absence of probable cause). According to Sheriff Chambers, the proposed amended complaint establishes that plaintiff interfered with law enforcement in violation of K.S.A. § 21-5904. Contrary to Sheriff Chambers' argument, the proposed amended complaint does not establish on its face that plaintiff impeded, obstructed or otherwise sufficiently hindered Defendant Lyden's ability to do his job to establish probable cause for the extended detention of plaintiff.

In the alternative, Sheriff Chambers moves to dismiss this claim on the grounds that plaintiff cannot establish the requisite link between any First Amendment violation and Sheriff Chambers' conduct. *See Cox v. Glanz,* 800 F.3d 1231, 1248 (10th Cir. 2015) (a plaintiff arguing for the imposition of supervisory liability must show an affirmative link between the supervisor and the constitutional violation). Plaintiff, in turn, contends that the requisite link is established at this juncture because the allegations tend to show that Sheriff Chambers had knowledge of Defendant Lyden's propensity and history of misconduct and unconstitutional behavior and failed to take corrective action. Indeed, plaintiff alleges in her complaint that the Sheriff's Department, at least two years prior to the incident involving plaintiff, was aware that Defendant Lyden was "overly aggressive" in the performance of his duties and that he had made "unnecessary" arrests and stops "when this was at odds with agency protocols and procedures." Plaintiff alleges that a determination was made that further training with respect to Defendant Lyden would not likely change his behavior but that the Sheriff's Department declined to follow a specific recommendation to assign Defendant Lyden to a different position and, in fact, selected Deputy Lyden to train other officers in the field. Plaintiff further alleges that Defendant Lyden communicated to Sheriff Chambers that he believed he could violate an individual's

8

constitutional rights during the course of an investigation so long as he believed that the individual was "guilty." These allegations, if proven, are sufficient to establish Sheriff Chambers' liability for defendant Lyden's conduct. *See Wilson v. Montano*, 715 F.3d 847, 858 (10th Cir. 2013) (complaint that alleged that Sheriff was deliberately indifferent to ongoing constitutional violations which occurred under his supervision and due to his failure to train and supervise was sufficient to state plausible claim for relief under § 1983). Plaintiff, then, may amend her complaint to include these allegations and this claim against Sheriff Chambers.

*Fourth Amendment Claim*

As noted above, plaintiff contends that Sheriff Chambers violated her Fourth Amendment rights by failing to supervise and control the activities of Defendant Lyden who, in turn, unnecessarily extended the stop after the driver passed the field sobriety test and then detained and handcuffed plaintiff without probable cause. With respect to plaintiff's allegation that Deputy Lyden's extension of the stop violated her Fourth Amendment rights, Sheriff Chambers asserts that the amended complaint fails to support the allegation because the complaint conclusively establishes that Deputy Lyden lawfully extended the stop to investigate circumstances suggesting a "significant possibility" of illegal activity. Specifically, Sheriff Chambers contends that the underage status of the vehicle's occupants was sufficient in and of itself to permit Deputy Lyden to investigate whether the occupants had consumed or were in possession of alcohol in violation of the law. *See United States v. Kitchell*, 653 F.3d 1206, 1217–18 (10th Cir.2011) (stating settled rule that an officer may extend a traffic stop beyond its original purpose if the officer "acquire[s] a particularized and objective basis for suspecting the

9

particular person stopped of criminal activity" (internal quotation marks omitted)). Because Sheriff Chambers' argument is not framed in the context of a qualify immunity defense,[5] the complaint need only state a plausible claim for relief and it clearly does so.

With respect to plaintiff's allegation that she was detained and handcuffed in violation of her Fourth Amendment rights, Sheriff Chambers advances the same arguments he presented in connection with plaintiff's First Amendment claim—that no violation occurred because Deputy Lyden had probable cause to detain plaintiff in light of her interference and, in any event, the amended complaint does not sufficiently establish the requisite link between any Fourth Amendment violation and Sheriff Chambers' conduct. For the reasons set forth above with respect to the First Amendment claim, the court rejects these arguments. Plaintiff may amend her complaint to include a Fourth Amendment claim against Sheriff Chambers based on her detention.

*Fifth Amendment Claim*

Sheriff Chambers moves to dismiss plaintiff's claim under the Fifth Amendment on the grounds that any alleged deprivation of procedural due process under the Fifth Amendment mirrors plaintiff's claim under the Fourth Amendment and that the Fourth Amendment necessarily applies to plaintiff's allegations. Sheriff Chambers further asserts that plaintiff's Fifth Amendment retaliation claim lacks merit because plaintiff's right to remain silent has no application in the context of this case because that right "is a trial right" and plaintiff's criminal

---

[5] As noted earlier, Sheriff Chambers is entitled to reassert his qualified immunity defense—raised in response to the initial complaint—in response to the amended complaint.

case never proceeded to trial.  According to Sheriff Chambers, then, he cannot be liable under § 1983 for supervisory liability because plaintiff has not alleged a viable Fifth Amendment violation.  *See Sherman v. Klenke*, ___ Fed. Appx. ___, 2016 WL 3453697, at *6 (10th Cir. June 23, 2016) (for a claim of supervisory liability to succeed under § 1983, the plaintiff must establish a subordinate's underlying constitutional violation) (citing *Gray v. Univ. of Colo. Hosp. Auth.*, 672 F.3d 909, 918 n.7 (10th Cir. 2012)).

Plaintiff does not address these arguments in her reply to the motion for leave and, thus, it appears that she has abandoned the claim.  In any event, plaintiff's Fifth Amendment due process claim clearly fails as a matter of law.  *See Shimomura v. Carlson*, 811 F.3d 349, 361 (10th Cir. 2015) (allegation of deprivation of physical liberty governed exclusively by Fourth Amendment rather than Due Process Clause of Fifth Amendment; dismissal of Fifth Amendment claim appropriate).  The court also agrees with Sheriff Chambers that plaintiff's Fifth Amendment retaliation claim fails to state a plausible claim for relief in the absence of any allegation that plaintiff was compelled to be a witness against herself at any point in the proceedings.  *See Chavez v. Martinez*, 538 U.S. 760, 770 (2003) ("a violation of the constitutional right against self-incrimination occurs only if one has been compelled to be a witness against [herself] in a criminal case"); *Talib v. Guerrero*, 2016 WL 1470082, at *9 (C.D. Cal. Mar. 14, 2016) (dismissing claim that officers retaliated against plaintiffs for invoking their right to remain silent in the absence of any allegation that they were compelled to be witnesses against themselves in criminal case).

Plaintiff's Fifth Amendment retaliation claim also fails because plaintiff does not allege that Defendant Lyden asked plaintiff any incriminating questions after she was placed in

11

custody. *See Pallottino v. City of Rio Rancho*, 31 F.3d 1023, 1026 (10th Cir. 1994) (right to remain silent during stop is limited to pre-arrest custodial interrogations where incriminating questions are asked). She alleges only that she refused Deputy Lyden's request to submit to a preliminary breath test and that she refused "to answer Deputy Lyden's questions" prior to the time she was taken into custody in the patrol car. Her refusal to submit to the breath test would implicate, if anything, only the Fourth Amendment. *See Skinner v. Railway Labor Executives Ass'n*, 489 U.S. 602, 616-17 (1989) (breathalyzer exam for chemical analysis constitutes search under Fourth Amendment). Her refusal to answer unidentified questions before she was taken into custody does not raise a plausible Fifth Amendment claim and, even if she refused to answer questions once she was taken into custody (which she does not allege), she does not allege the nature of those questions anywhere in her proposed complaint. *See Pallottino*, 31 F.3d at 1026 (no Fifth Amendment claim where plaintiff refused to answer questions concerning biographical information because such disclosure did not create the threat of criminal liability or self-incrimination).

Because plaintiff's proposed amended complaint does not state a viable Fifth Amendment claim, her claim for supervisory liability against Sheriff Chambers necessarily fails. Plaintiff, then, is not permitted to amend her complaint to include a § 1983 claim based on an alleged violation of her Fifth Amendment rights.

*Remaining Argument*

Deputy Lyden opposes plaintiff's motion for leave to amend her complaint on the grounds that he will suffer prejudice if she is permitted to do so. Deputy Lyden argues that he

has already deposed plaintiff and obtained admissions from plaintiff based upon the allegations in the initial complaint and he summarily asserts that he "will be prejudiced with respect to the testimony and admissions already obtained" if leave to amend is granted. This argument is rejected because Deputy Lyden has not come close to establishing prejudice within the meaning of Federal Rule of Civil Procedure 15. *See Minter v. Prime Equipment Co*., 451 F.3d 1196, 1208 (10th Cir. 2006) (prejudice typically exists only when a "late" amendment unfairly affects the defendant's ability to prepare a defense to the amendment). The proposed amendment does not include any new claims against Deputy Lyden but simply supplements the factual allegations supporting the claims set forth in the initial complaint. *See Gillette v. Tansy*, 17 F.3d 308, 313 (10th Cir. 1994) (finding no evidence of prejudice when the amended claims tracked the factual situations set forth in the original claims). Deputy Lyden does not suggest that his ability to prepare a defense to the amended complaint is impaired in any way.

**IT IS THEREFORE ORDERED BY THE COURT THAT** plaintiff's motion for leave to amend her complaint (doc. 28) is **granted in part and denied in part** and she is permitted to file an amended complaint consistent with this memorandum and order no later than Monday, August 29, 2016. Sheriff Chambers' motion to dismiss (doc. 15) is **moot**.

**IT IS SO ORDERED.**

Dated this 15th day of August, 2016, at Kansas City, Kansas.

13

s/ John W. Lungstrum
John W. Lungstrum
United States District Judge

14